1999 ME 86

**STATE of Maine**

v.

**Vincent ROBINSON.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 17, 1999.

Decided June 3, 1999.

R. Christopher Almy, District Attorney, Michael Roberts, Dep. Dist. Atty., C. Daniel Wood, Asst. Dist. Atty., Bangor, for State.

Jeffrey C. Toothaker, Toothaker & Chong, Ellsworth, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Vincent Robinson appeals from a judgment of the Superior Court (Penobscot County, *Mead, J.*) after a jury verdict convicting him of two counts of gross sexual assault (Class A), 17–A M.R.S.A. § 253 (Supp.1998), and one count of criminal restraint (Class D), 17–A M.R.S.A. § 302 (1983 & Supp.1998). On appeal, Robinson argues that the Superior Court (1) erred in denying his motion to suppress the complainant's in-court identification; (2) erred in excluding Department of Human Services (DHS) records that were offered to indicate a potential alternative perpetrator; and (3) abused its discretion in not admitting the same DHS records to rebut an inference of the complainant's sexual inexperience.

[¶ 2] Because the two gross sexual assault charges arose out of one incident of gross sexual assault, we consolidate the

gross sexual assault convictions into one count, and we affirm the convictions.

## I. CASE HISTORY

[¶ 3] The evidence at trial indicated that on the rainy afternoon of August 28, 1997, the complainant, a ten-year-old girl, was visiting the home of a friend of the family. While at the home, she met a man, later identified as Vincent Robinson. He asked her to accompany him into nearby woods to bring in some laundry. At the time, the complainant described him as being dressed in a girl's coat, black jeans and mittens, even though it was summer. Once in the woods, Robinson told the complainant to wait for him to return while he secured a dog that he said might be loose. When Robinson returned he had changed his clothes to a green shirt and blue pants which, the complainant said, made him look like a teenager, although at the time he was 32–years–old.

[¶ 4] Robinson then proceeded to tie the complainant's hands behind her back, put a sock in her mouth, wrap an ace bandage around her head, remove her pants and underwear, and have sexual intercourse with her. At trial, the complainant also testified that Robinson then turned her over and penetrated her from behind, although this element of the event apparently had not been disclosed previously and did not serve as the basis for the charges brought by the State.

[¶ 5] Once Robinson had completed his act, he dressed the complainant, untied her, turned her away from him, removed the ace bandage from her face and the sock from her mouth, and ordered her to run away without looking at him. She promptly reported the matter to a cousin and her mother who immediately notified the Bangor Police.

[¶ 6] The complainant identified her assailant as a tall, red-haired man with no facial hair, a big nose, and a narrow face. The investigation shortly focused on the defendant who was arrested approximately an hour after the sexual assault had been reported.

[¶ 7] In September 1997, the Penobscot County Grand Jury issued a three count indictment. Count I charged Vincent Robinson with gross sexual assault by compulsion (Class A), 17–A M.R.S.A. § 253(1)(A) (Supp.1998).[1] Count II charged gross sexual assault against a child under 14 years (Class A), 17–A M.R.S.A. § 253(1)(B).[2] Count III charged criminal restraint (Class D), 17–A M.R.S.A. § 302 (1983 & Supp.1998).[3]

[¶ 8] During trial preparation, the defense requested and was allowed access to

---

1. Section 253(1)(A) provides that "[a] person is guilty of gross sexual assault if that person engages in a sexual act with another person and: [t]he other person submits as a result of compulsion, as defined in section 251, subsection 1, paragraph E". Section 251(1)(E) defines compulsion as:

   the use of physical force, a threat to use physical force or a combination thereof that makes a person unable to physically repel the actor or produces in that person a reasonable fear that death, serious bodily injury or kidnapping might be imminently inflicted upon that person or another human being.

   17–A M.R.S.A. § 251(1)(E) (Supp.1998).

2. Section 253(1)(B) provides that "a person is guilty of gross sexual assault if that person engages in a sexual act with another person and: [t]he other person, not the actor's spouse, has not in fact attained the age of 14 years."

3. Section 302 provides in relevant part that:

   1. A person is guilty of criminal restraint if:

   A. Knowing he has no legal right to do so, he intentionally or knowingly takes, retains or entices a person who is:

   (1) Under the age of 14;

   (2) Incompetent; or

   (3) Fourteen years or older, but has not attained his 17th birthday, the actor being at least 18 years of age, from the custody of his parent, guardian or other lawful custodian, with the intent to hold the person permanently or for a prolonged period; or

   B. He knowingly restrains another person. As used in this paragraph, "restrain" shall have the same meaning as in section 301, subsection 2.

all DHS records regarding the complainant and the complainant's mother.

[¶ 9] At a pretrial hearing, the State made an oral motion to exclude the DHS records as evidence at trial. Robinson urged that the written DHS records should be admitted into evidence because he asserted (i) the records indicated the existence of alternative perpetrators, particularly one Richard D., and (ii) the records rebutted any inference of the complainant's sexual naivete. The court ruled that although the records suggested prior abuse of the complainant by Richard D., no evidence existed to show that Richard D. had access to the complainant during the narrow time frame of the incident on the afternoon of August 28, 1997. The court also determined that the evidence did not show that the complainant had used any terminology or demonstrated familiarity with sexual anatomy or function that rebutted the inference of sexual inexperience.

[¶ 10] Also at the pretrial hearing, Robinson moved to suppress the anticipated in-court identification of Robinson by the complainant. Supporting his motion, Robinson urged that the identification should be suppressed because Robinson would be the only male with red hair in the courtroom and the complainant had not previously made an out-of-court identification of him. The court denied the motion.[4]

[¶ 11] The jury found Robinson guilty on all counts after trial. He was later sentenced to 364 days on the count of criminal restraint and 17 years with all but 12 years suspended and a period of probation of six years on each of the two gross sexual assault counts, those sentences to be served concurrently with each other but consecutive to the count of criminal restraint. This appeal followed.[5]

## II. DUPLICATIVE CHARGE

[¶ 12] The record is clear that when the State charged the defendant, the charges were based on the assumption that one act of gross sexual assault had been committed. Counts I and II were presented, not to charge separate criminal acts, but as alternative charges for the same criminal act. Charging a defendant with two separate and essentially identical crimes for the same criminal act subjects a defendant to double jeopardy. *See State v. Poulin*, 538 A.2d 278 (Me.1988). To allow for alternative charging where the same criminal act may be committed in several ways, M.R.Crim. P. 7(c) recognizes that "[i]t may be alleged in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means."

[¶ 13] When, instead of charging two alternative theories within one count, the State presents the two alternative theories charged as two counts, based on one criminal act, court action to consolidate the duplicative counts is appropriate to assure that a person cannot be convicted or punished more than once for the same criminal act. *See State v. Bagley*, 507 A.2d 560, 563 (Me.1986); *State v. Walker*, 506 A.2d 1143, 1149 (Me.1986).

[¶ 14] While neither party raised on appeal the duplicative nature of counts I and II, the matter is appropriately noticed by this Court because the right to be free from double jeopardy provided by the Fifth Amendment of the United States Constitution and article I, section 8 of the Maine Constitution, is a fundamental right of all citizens, and the law on the issue is clear and well established. *See Poulin*, 538 A.2d 278; *Bagley*, 507 A.2d at 563. In such circumstances, M.R.Crim. P. 52(b) specifies that "[o]bvious errors or defects affecting substantial rights may be noticed

---

4. The court actually ruled that it "declined to grant the motion to suppress as tendered."

5. Leave to appeal sentence has been denied. *State v. Robinson*, No. SRP–98–70 (Me. Sent. Rev. Panel, September 14, 1998).

although they were not brought to the attention of the court." *See also State v. Brunette*, 501 A.2d 419, 422–25 (Me.1985).

[¶ 15] The error in not consolidating the counts at some time prior to entry of judgment is an obvious error of constitutional dimension that may be corrected by this Court. Counts I and II are consolidated into a single count. The matter need not be remanded for resentencing, as it is clear from the sentencing transcript that the court contemplated it was sentencing for only a single act, not two separate acts of gross sexual assault.

### III. IN–COURT IDENTIFICATION

[¶ 16] In urging that the trial court should have anticipated an impermissibly suggestive situation surrounding the complainant's in-court identification and suppressed that identification, the defense misperceives the law regarding suppression of improperly obtained or improperly created evidence. Simply stated, the law developed from Fourth Amendment practice and as applied in accordance with M.R.Crim. P. 41A holds that evidence may be excluded from trial if, as a result of State action, that evidence is improperly obtained or corrupted in the course of investigation or preparation for trial. *See State v. Rolls*, 599 A.2d 421, 423–24 (Me. 1991). Such pretrial issues are properly addressed by motions to suppress brought in accordance with Rule 41A.

[¶ 17] Issues relating to anticipated or observed improprieties in presentation of evidence during trial are properly addressed, not by motions to suppress, but by motions in limine or by timely objections directed to the court and giving the court, and opposing counsel, reasonable notice and opportunity to correct or avoid the problem. Any issue of improper suggestiveness or inaccuracy of an in-court identification that is observed by the jury is more properly considered one of weight than of admissibility.

[¶ 18] When the identification was made in court, no objection was offered by the defense at the time. Later, defense counsel appropriately argued suggestibility to the jury. That is exactly how the issue should have been presented. The jury observed the identification. Its accuracy or suggestibility was a question of weight for the jury to decide, and it did so. There was no error in the in-court identification practice employed in this case.

### IV. EXCLUSION OF DHS RECORDS

[¶ 19] The court acted appropriately in excluding the DHS records sought to be admitted by the defense.[6] A review of the DHS records, as argued by the defense, reveals no indication that the alternative suspect cited by the defense had any access to the complainant during the very narrow time frame in which these events occurred. Further, there is nothing in the record indicating that the alternative suspect had the physical characteristics rather explicitly described by the complainant which led to identification and arrest of the defendant.

[¶ 20] Any connection between an alternative perpetrator and the crime must be reasonably established by admissible evidence that a defendant is prepared to offer. "Without such evidence a defendant cannot be allowed to use the trial to conduct an investigation that [the defendant] hopes will convert what amounts to

---

**6.** Neither party in this appeal has raised any issue as to whether the DHS records themselves would be admissible in evidence. Because that threshold issue has not been addressed by the parties, who have instead focused on the contents of the DHS records, this Court does not address directly or by implication whether, were the issue properly presented, it would determine that the written DHS records could be admitted in the manner in which the defense sought to use the records at trial here. For example, it is not clear that any or all of the records in the DHS file would fall within any exception to the hearsay rules.

speculation into a connection between the other person and the crime." *State v. Dechaine,* 572 A.2d 130, 134 (Me.1990); *see also State v. Robinson,* 628 A.2d 664, 667 (Me.1993).

[¶21] Likewise, the trial court did not abuse its discretion in not admitting the DHS records to rebut any inference of the victim's sexual naivete. A threshold for any such admission of evidence is extraordinary sexual knowledge, for one's age, displayed by a victim. *See State v. Warren,* 1998 ME 136, ¶13, 711 A.2d 851, 856. Without such a demonstration, the trial court properly excluded such evidence as irrelevant. *See id.,* 1998 ME 136, ¶¶ 11–12, 711 A.2d at 855–56; *see also* M.R. Evid. 401 & 402.

The entry is:

Count I and count II are consolidated into one count with the judgment amended accordingly. As amended, judgment affirmed.