2003 ME 154

**STATE of Maine**

v.

**Benjamin CORMIER.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Sept. 25, 2003.

Decided: Dec. 23, 2003.

Stephanie Anderson, District Attorney, Julia Sheridan, Asst. Dist. Atty., Portland, for State.

William H. Childs, Esq., Childs, Rundlett, Fifield, Shumway & Altshuler, LLC, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, and ALEXANDER, JJ.

CLIFFORD, J.

[¶ 1] Benjamin Cormier appeals from judgments of conviction for one count of gross sexual assault (Class A), 17–A M.R.S.A. § 253(1)(A) (Supp.2003), and two counts of gross sexual assault (Class B), 17–A M.R.S.A. § 253(2)(A) and (2)(D) (Supp.2003),[1] entered in the Superior Court (Cumberland County, *Delahanty, J.*) following a jury trial. Cormier contends that the trial court erred or acted beyond the bounds of its discretion by: (1) allowing expert testimony concerning the injuries of the victim; (2) excluding evidence of the victim's prior sexual experience; (3) denying Cormier's request that the jury be told that one of the State's witnesses was an immunized witness, and should be given greater scrutiny; and (4) instructing the jury on accomplice liability. We are unpersuaded by Cormier's contentions, and affirm the judgments.

## I. FACTUAL AND PROCEDURAL BACKGROUND

[¶ 2] The evidence disclosed the following: On September 9, 2001, Cormier and his friend, Ryan Stinchfield, picked up the victim, a fourteen-year-old female high school student, and brought her to a party at Stinchfield's home in New Gloucester. At the party, the victim had two alcoholic beverages and some marijuana. Sometime later in the evening, the victim began to feel tired and dizzy and went into Stinchfield's bedroom and laid down on the bed. While the victim was in Stinchfield's bedroom, Cormier put his penis in her mouth. Cormier then had genital-to-genital sex with the victim. The victim woke up feeling pain and soreness in her vagina. Matthew Kelly was present in Stinchfield's bedroom while Cormier was having sex with the victim. Kelly and the victim testified that they heard Cormier say during intercourse: "I can't do this to a girl who is crying."

[¶ 3] Subsequently, the victim dressed, left the bedroom and sat down in the kitchen. Shortly afterward, Stinchfield carried her to Cormier's vehicle. Cormier and Kelly stated that they were taking the

---

1. Title 17–A M.R.S.A. § 253 provides in part:
   1. A person is guilty of gross sexual assault if that person engages in a sexual act with another person and:
      A. The other person submits as a result of compulsion
      . . . .
   2. A person is guilty of gross sexual assault if that person engages in a sexual act with another person and:

   A. The actor has substantially impaired the other person's power to appraise or control the other person's sexual acts by administering or employing drugs, intoxicants or other similar means.
   . . . .
   D. The other person is unconscious or otherwise physically incapable of resisting and has not consented to the sexual act.

victim home. Rather than taking her directly home, however, Cormier and Kelly took her to the Texaco station and then to the Gray Marketplace in Gray. While at the Gray Marketplace, Cormier took the victim to a picnic table behind the store and forced her to perform oral sex on him, by physically pressing her down by her shoulders and holding her head. Cormier and Kelly then dropped the victim off near her home.

[¶ 4] Cormier was subsequently charged in a nine-count indictment. The indictment alleged that Cormier committed six counts of Class B gross sexual assault, with three violations of 17–A M.R.S.A. § 253(2)(A) [2] and three violations of 17–A M.R.S.A. § 253(2)(D). [3] The indictment also charged Cormier with three counts of Class A gross sexual assault, violations of 17–A M.R.S.A. § 253(1)(A). [4]

[¶ 5] Before trial, Cormier moved in limine to exclude the testimony of Dr. Laurence Ricci. The court denied the motion, and allowed Dr. Ricci, whose qualifications were stipulated to, to testify that the injuries to the victim's genital area were inconsistent with consensual intercourse.

[¶ 6] Cormier proffered the testimony of a witness who said that he had engaged in consensual sexual acts with the victim at the end of the summer of 2001. The court refused to allow the testimony.

[¶ 7] Cormier requested the jury be told that Kelly, a State's witness who had been prosecuted as a juvenile and had been adjudicated of committing three counts of gross sexual assault against the same victim on the same night, was an "immunized" witness. In the alternative, Cormier argued that the jury should be instructed that Kelly's testimony should be subjected to special or "greater" scrutiny. The State requested that the jury be instructed that Cormier could be found guilty of gross sexual assault if the jury determined that Stinchfield acted as an accomplice in inviting the victim to the party and mixing her at least one drink. The court declined to give any of the requested instructions.

[¶ 8] During deliberations, the jury asked for specific instructions on gross sexual assault, specifically the language in 17–A M.R.S.A. § 253(2)(A) that "[t]he actor has substantially impaired the other person's power to appraise or control [her] sexual acts." The jury inquired as to whether an "actor [could] use an agent to administer [the] drug or alcohol." In response to this question, and over the objection of Cormier, the court instructed the jury on accomplice liability and the possible accomplice role that Stinchfield could have played. *See* 17–A M.R.S.A. § 57 (1983).

[¶ 9] The jury found Cormier guilty of Counts I, II, III, IV, and IX. The jury

**2.** Counts I, II, and V of the indictment alleged that Cormier engaged in direct genital-to-genital contact with the victim, and sexual contact between his genitals and the victim's mouth, after "substantially impair[ing] [the victim's] power to appraise or control [her] sexual acts by administering or employing drugs, intoxicants or other similar means." 17–A M.R.S.A. § 253(2)(A).

**3.** Counts III, IV, and VI alleged that Cormier engaged in direct genital-to-genital contact with the victim, and sexual contact between

his genitals and the victim's mouth, while she was "unconscious or otherwise physically incapable of resisting and [had] not consented to the physical act." 17–A M.R.S.A. § 253(2)(D).

**4.** Counts VII, VIII, and IX alleged that Cormier engaged in sexual contact between his genitals and the victim's mouth, and that the victim "submit[ted] [to the sexual act] as a result of compulsion." 17–A M.R.S.A. § 253(1)(A).

returned a verdict of not guilty with respect to Counts V and VI. After the jury verdict, Counts III and IV were merged into Counts I and II, respectively, for judgment purposes, because Counts I and II arise from the same acts as Counts III and IV. *See State v. Robinson,* 1999 ME 86, ¶¶ 12–15, 730 A.2d 684, 687–88; *State v. Thornton,* 540 A.2d 773 (Me.1988). The court entered judgments of acquittal on the remaining Class A counts, Counts VII and VIII.

[¶ 10] Following his conviction, Cormier was sentenced to concurrent terms of imprisonment of ten years on the Class B counts and twelve years on the Class A count, with all but six years of the sentences being suspended. The court ordered that Cormier be placed on probation for six years for the Class B crimes and ten years for the Class A crime. This appeal followed.

## II. DISCUSSION

### 1. The Admission of the Testimony of Dr. Ricci

[¶ 11] Cormier contends that the court should not have allowed Dr. Ricci to testify that the injuries to the victim's genital area were not consistent with consensual sexual activity. He argues that, in reality, the testimony went to the ultimate issue of the case because the crucial issue was whether the sexual activity between Cormier and the victim was consensual.

[¶ 12] Rule 702, of the Maine Rules of Evidence, governs the admissibility of expert testimony and provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

[¶ 13] In order to be admissible, expert testimony must be "relevant and [ ] assist the trier of fact [in] understand[ing] the evidence or [in] determin[ing] a fact in issue." *State v. Williams,* 388 A.2d 500, 504 (Me.1978). Dr. Ricci's testimony concerning the nature of the victim's injuries is relevant to the present case because it has a "tendency to make the existence of [a] fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R. Evid. 401. Dr. Ricci's testimony bears directly on the issue of whether the sexual contact between the parties was consensual, a crucial and relevant element of the crimes charged, and aids the fact-finder because it is not the type of knowledge that an ordinary juror possesses.

[¶ 14] Contrary to Cormier's contention, an expert opinion "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." M.R. Evid. 704. Moreover, Dr. Ricci conceded that he could not definitively "state to this jury . . . that these findings indicate rape." The court's determination that Dr. Ricci could testify that the injuries of the victim were inconsistent with consensual intercourse, therefore, was not clearly erroneous.

### 2. The Past Sexual Behavior of the Victim

[¶ 15] Cormier next contends that the court erred in excluding evidence of the victim's prior sexual experience, and in doing so created the risk that the jury would find it doubtful that she would consent to sexual contact with Cormier.

[¶ 16] With a few discrete and limited exceptions, opinion or reputation evidence of the past sexual history of a victim of an alleged sexual assault is not admissible.

M.R. Evid. 412(a). These exceptions are set out in M.R. Evid. 412(b):

> the only evidence of the alleged victim's past sexual behavior that may be admitted is ... (1)[e]vidence ... of sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury; or (2)[e]vidence ... of sexual behavior with the accused offered by the accused on the issue of whether the alleged victim consented to the sexual behavior with respect to which the accused is charged.

In addition, Rule 412(b)(3) allows the introduction of "[e]vidence the exclusion of which would violate the constitutional rights of the defendant."

[¶ 17] Cormier did not allege any prior sexual activity between himself and the victim. M.R. Evid. 412(b)(2). Nor does Cormier contend that, pursuant to Rule 412(b)(1), another person was the *source of* the injuries to the victim. Accordingly, the exceptions set out in Rule 412(b)(2) and (b)(1) do not apply.

[¶ 18] Instead, Cormier sought to introduce evidence of the victim's prior sexual activities to show she had the propensity to engage in consensual sex. This is precisely what Rule 412 prohibits. Rule 412(b)(2) allows only evidence of prior sexual acts *with the accused* to prove that the victim consented to sexual activity with the accused at a later time, but does not allow evidence of prior sexual acts *with persons other than the accused* to show that the victim later consented to sexual activity with the accused. The court properly excluded evidence of the victim's prior sexual activity with another person.

### 3. The Immunized Witness Instruction

[¶ 19] Cormier's contention that the jury should have been instructed that Kelly, who testified for the State, had been granted immunity is without merit. Following his adjudication in juvenile court for having committed sexual crimes involving the same victim, Kelly was serving the maximum possible juvenile sentence at a juvenile facility. There had been no promise of immunity made to Kelly in exchange for his testimony.

[¶ 20] Cormier also requested that the court instruct the jury to view Kelly's testimony with "greater scrutiny." It is "within the justice's discretion to decide [whether it is] unnecessary to single out [specific] testimony for special scrutiny, and perhaps undesirable to do so because of undue emphasis." *State v. Atkinson*, 458 A.2d 1200, 1204 (Me.1983). The general instructions given in this case were adequate to emphasize to the jury the importance of determining witness credibility, and the court acted within its discretion in refusing to give the requested special scrutiny instruction.

### 4. The Accomplice Liability Instruction

[¶ 21] Cormier's final contention is that the trial court improperly instructed the jury that it could find Cormier guilty of gross sexual assault under an accomplice liability theory and that he is entitled to a new trial. We disagree. We review jury instructions "as a whole, taking into consideration the total effect created by all the instructions and the potential for juror misunderstanding." *State v. Cote*, 462 A.2d 487, 490 (Me.1983).

[¶ 22] Accomplice liability is governed by 17-A M.R.S.A. § 57 (1983) which provides:

> 3. A person is an accomplice of another person in the commission of a crime if:
>
> A. With the intent of promoting or facilitating the commission of the crime, he solicits such other person to commit the crime, or aids or agrees to aid or attempts to aid such other person in

planning or committing the crime. A person is an accomplice under this subsection to any crime the commission of which was a reasonably foreseeable consequence of his conduct.

*Id.* § 57(3)(A). Although we have not addressed whether a person may be an accomplice to another person who commits the crime of gross sexual assault, we have previously held that "[t]he definition of accomplice liability set forth in the Criminal Code ... is unlimited so far as the crimes to which it applies." *State v. Stratton,* 591 A.2d 246, 247 (Me.1991) (internal citations omitted).

[¶ 23] The court provided the jury with an instruction on accomplice liability that mirrored the statute, but did not instruct the jury that they could convict *Cormier* as an accomplice. Rather, in its instruction, the court stated that "the State must show beyond a reasonable doubt that [Stinchfield] knew of the intentions of [Cormier] [w]ith respect to any plans or conduct regarding [the victim] [i]n administering, at the time that he administered the drug or the alcohol." The instruction was given to explain the possible accomplice role that *Stinchfield* could have played in the commission of the crimes by Cormier, pursuant to 17–A M.R.S.A. § 253(2)(A).

[¶ 24] Counts I and II required the State to prove beyond a reasonable doubt that Cormier or an accomplice of Cormier "administer[ed] or employ[ed] drugs, intoxicants or other similar means." 17–A M.R.S.A. § 253(2)(A). There was substantial evidence at trial that Stinchfield aided Cormier in the commission of his crimes against the victim. Before the victim arrived at the party, Cormier and Stinchfield discussed inviting her to the party, getting her drunk, and engaging in sexual acts with her. Both Cormier and Stinchfield picked up the victim at her home and brought her to the party, knowing that alcohol would be served at the party. The jury heard testimony that Stinchfield poured the victim at least one drink while she was at the party. Given that the accomplice liability instruction was directed at Stinchfield's role, and not Cormier's role as a potential accomplice, the instruction did not deprive Cormier of a fair trial, and any error the court may have made in giving the instruction was harmless. *See State v. Sullivan,* 1997 ME 71, ¶ 5, 695 A.2d 115, 117 (stating that an error is harmless if it is highly probable the error did not affect the judgment).

The entry is:

Judgments affirmed.