MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2013 ME 42
Docket:        Ken-12-259
Argued:        February 12, 2013
Decided:       April 11, 2013

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

STATE OF MAINE

v.

RAYMOND BELLAVANCE JR.

LEVY, J.

[¶1]  Raymond Bellavance Jr. appeals from a judgment of conviction of one count of arson (Class A), 17-A M.R.S. § 802(1)(A) or (1)(B)(2) (2012), entered in the trial court (*Murphy, J.*) following a jury trial.  Bellavance makes multiple arguments on appeal, including that the indictment and jury verdict deprived him of his constitutional right to be free of double jeopardy and that the court effectively deprived him of his right to counsel when it permitted the testimony of an anticipated defense witness who decided, mid-trial, to testify for the prosecution in exchange for a promise of immunity.  We affirm the judgment of conviction.

I.  BACKGROUND

[¶2]  On June 3, 2009, a fire destroyed the Grandview Topless Coffee Shop in Vassalboro.  In March 2010, in the course of the investigation into the cause of

the fire, State Fire Marshal's Office Investigator Kenneth MacMaster interviewed Bellavance and accused him of starting the fire. Bellavance denied any involvement and maintained that on the night of the fire, he had spent time with Thomas Mulkern and Mulkern's girlfriend, gone to a local bar, visited an acquaintance's house, and slept at his daughter's house. In April, MacMaster interviewed Mulkern regarding the fire.

[¶3] On July 1, 2010, Bellavance was indicted for setting the fire and charged with two separate counts of arson pursuant to 17-A M.R.S. § 802(1)(A) and (1)(B)(2). Bellavance pleaded not guilty at arraignment.

[¶4] Following arraignment, Bellavance filed several motions alleging discovery violations by the prosecution. *See* M.R. Crim. P. 16(d). In August 2011, the court ordered the prosecution to "scrupulously ensure that all exculpatory evidence known to any law enforcement agency involved in the case has been disclosed" and warned that any violation of the order "may result in dismissal of the charges against [Bellavance]." In September, the court ordered the prosecution to provide Bellavance with "all investigatory reports."

[¶5] In October 2011, the prosecution provided certain discovery materials to Bellavance, including a summary of MacMaster's April 2010 investigatory interview of Mulkern. According to the summary, Mulkern admitted to spending time with Bellavance on the night of the fire but denied MacMaster's accusations

that Mulkern had assisted Bellavance in setting the fire, despite MacMaster's advice that Mulkern should "cut the best deal he possibly could."

[¶6]  In November 2011, Bellavance filed a motion to compel additional discovery within seven days and a motion to impose sanctions for discovery violations or, in the alternative, to compel discovery.  Among other things, these motions requested information concerning threats or offers of leniency made to subjects of the arson investigation to encourage their cooperation with authorities.

[¶7]  At jury selection on December 9, the court reviewed the parties' witness lists.  The prosecution listed Mulkern's girlfriend—but not Mulkern—as an expected witness.  Bellavance identified Mulkern as a witness for the defense.

[¶8]  At a December 13 motion hearing, the court denied Bellavance's motion to impose discovery sanctions but granted, in part, Bellavance's motion to compel discovery.  The court ordered the prosecution to disclose all threats and offers of leniency made to the witnesses the prosecution intended to call at trial.  Despite Bellavance's argument that he was also entitled to disclosure of all threats and offers of leniency made during the course of the investigation to persons that the prosecution did not intend to call to testify, the court concluded that such information was not exculpatory and that the prosecution need not disclose it.

[¶9]  The jury trial began on December 14.  On the evening of December 20, before the prosecution had rested its case, Mulkern approached the prosecution and

offered to testify against Bellavance in exchange for immunity from prosecution. Before trial on the morning of December 21, the prosecution disclosed to Bellavance and the court that it was prepared to grant immunity to Mulkern and that it expected him to testify that he had assisted Bellavance in carrying out the arson.

[¶10] After the prosecution disclosed Mulkern's anticipated testimony, the court asked why the prosecution had not granted Mulkern immunity before December 20, given that Mulkern's statement was "completely consistent" with the prosecution's theory of the case. The prosecution responded that it had previously told Mulkern that it would not consider granting him immunity unless he told the truth, and that it did not consider Mulkern's previous denial of participation in the arson to be truthful.

[¶11] The transcript of the proceedings on the morning of December 21 reveals that Bellavance's attorney had previously interviewed Mulkern, who made statements that corroborated parts of Bellavance's March 2010 statement to MacMaster. On December 9, 2011, however, Mulkern disclosed to Bellavance, through counsel, that Mulkern might be unwilling to testify for the defense and that his statement might in fact support the prosecution. Then on December 12, Mulkern refused to speak with Bellavance's attorney. It was not until December 20 that the prosecution learned of Mulkern's decision to testify against Bellavance.

[¶12]   Following the December 21 inquiry into the circumstances of the immunity agreement, the court ordered that Bellavance have the opportunity to question Mulkern in the presence of Mulkern's attorney.  If Mulkern refused to submit to examination by Bellavance, the court would not permit Mulkern to testify.  To allow time for this examination, the court postponed further trial proceedings until December 23.

[¶13]   The prosecution provided Bellavance with an audio recording of Mulkern's proffer from December 20, which Bellavance reviewed.  On the evening of December 21, counsel for Bellavance questioned Mulkern for approximately an hour and forty minutes regarding Mulkern's changed testimony.

[¶14]   When the trial resumed on the morning of December 23, Bellavance objected to Mulkern's testimony, contending that it deprived the defense of adequate time to prepare for the change in testimony, including time to investigate Mulkern's geographical references and prior drug use.  Bellavance did not specifically request a continuance.  The court overruled Bellavance's objection and allowed Mulkern to testify that he was an accomplice to Bellavance in setting fire to Grandview.  The court noted that Bellavance could recall Mulkern as a witness and permitted Bellavance to cross-examine Mulkern regarding his drug use on the night of the fire.

6

[¶15]  During closing arguments on December 30, Bellavance questioned the credibility of Mulkern's testimony due to the immunity agreement.  The court instructed the jury that the prosecution had provided Mulkern and his girlfriend immunity and cautioned the jury to carefully consider whether self-interest had colored their testimony.  Later that day, the jury found Bellavance guilty of both counts of arson, 17-A M.R.S. § 802(1)(A) and (1)(B)(2).

[¶16]  On January 4, 2012, Bellavance filed a motion for a new trial pursuant to M.R. Crim. P. 33.[1]  In addition to renewing arguments he had previously made before the trial court, Bellavance asserted that he had new evidence in support of his motion, including that Mulkern might have recanted.  At a February 2 hearing, Bellavance admitted that he could not establish that Mulkern had recanted but requested the opportunity to ask Mulkern if he had recanted and to question him regarding his post-trial arrest and new drug use, if any.  When called by Bellavance, Mulkern invoked his Fifth Amendment rights and refused to testify because the immunity agreement did not extend to his post-testimony conduct.  On February 27, the court denied Bellavance's motion for a new trial.

[¶17]  On March 7, Bellavance filed a motion in arrest of judgment pursuant to M.R. Crim. P. 34, contending for the first time that the indictment violated his

---

[1]  Bellavance's motion for a new trial encompassed a motion for judgment of acquittal.  *See* M.R. Crim. P. 29(b).

procedural, due process, and double jeopardy rights because it charged two alternate theories of arson in separate counts based on only one criminal act.

[¶18]   On May 10, the court ordered entry of judgment and sentenced Bellavance.  The court's order noted that despite the fact that only one criminal event had occurred, the State's indictment and jury's verdict identified two separate counts of arson, 17-A M.R.S. § 802(1)(A) and (1)(B)(2).  To avoid violating Bellavance's double jeopardy rights, the court merged the two separate counts of arson and ordered Bellavance convicted of one count of Class A arson pursuant to either section 802(1)(A) or (1)(B)(2).  Thus, the court denied Bellavance's motion in arrest of judgment.  After merging the two counts, the court sentenced Bellavance to thirty years in prison, with no time suspended, and ordered him to pay restitution in the amount of $16,635.  Bellavance filed this appeal pursuant to 15 M.R.S. § 2115 (2012).[2]

## II.  DISCUSSION

[¶19]  Bellavance's arguments on appeal include that (A) the indictment and conviction violated his constitutional right to be free of double jeopardy, and (B) the court violated his Sixth Amendment rights when it overruled his objection to Mulkern's testimony.  We address each contention in turn.

---

[2]   After Bellavance filed this appeal, the Sentence Review Panel denied Bellavance's separate application for leave to appeal his sentence.  *See* 15 M.R.S. §§ 2151-57 (2012); M.R. App. P. 20.

8

A.    Double Jeopardy

[¶20]  The Double Jeopardy Clause of the Fifth Amendment to the United

States Constitution "protects against multiple punishments for the same offense."

*State v. Labbe*, 2009 ME 94, ¶¶ 3-4, 979 A.2d 693 (quotation marks omitted).[3]  We

have determined:

> When, instead of charging two alternative theories within one count,
> the State presents the two alternative theories charged as two counts,
> based on one criminal act, court action to consolidate the duplicative
> counts is appropriate to assure that a person cannot be convicted or
> punished more than once for the same criminal act.

*State v. Robinson*, 1999 ME 86, ¶ 13, 730 A.2d 684.

[¶21]  Here, there is no doubt that the indictment and jury verdict identified

two separate counts of arson based on one criminal act.[4]  Recognizing this, the trial

court properly consolidated the two separate counts and entered a judgment of

conviction and sentenced Bellavance for only one count of arson—for violating

either 17-A M.R.S. § 802(1)(A) or (1)(B)(2).  Accordingly, the court averted any

violation of Bellavance's double jeopardy rights.  *See Robinson*, 1999 ME 86, ¶ 13,

---

[3]  The Double Jeopardy Clause is made applicable to the States pursuant to the Fourteenth Amendment
and is coterminous with the double jeopardy provision found in the Maine Constitution. *State v. Labbe*,
2009 ME 94, ¶ 3, 979 A.2d 693; *see also* U.S. Const. amends. V, XIV, § 1; Me. Const. art. I, § 8.

[4]  Because deprivation of the right to be free of double jeopardy is a fundamental right, Bellavance's
failure to object to the indictment until after the verdict does not affect our responsibility to review for
"obvious error" whether a violation of his double jeopardy rights occurred.  *See State v. Robinson*,
1999 ME 86, ¶¶ 14-15, 730 A.2d 684; *see also* M.R. Crim. P. 52(b).  The test for obvious error is that
"there must be (1) an error, (2) that is plain, and (3) that affects substantial rights."  *State v. Herzog*,
2012 ME 73, ¶ 7, 44 A.3d 307 (quotation marks omitted).  "If these conditions are met, we will exercise
our discretion to notice an unpreserved error only if we also conclude that (4) the error seriously affects
the fairness and integrity or public reputation of judicial proceedings."  *Id.* (quotation marks omitted).

730 A.2d 684; *see also State v. Cormier*, 2003 ME 154, ¶¶ 1, 9, 838 A.2d 356 (affirming the court's post-verdict merger of multiple counts charging alternate theories of the same criminal act).

B.     Immunity Agreement

[¶22]     Bellavance contends that the court interfered with his Sixth Amendment right to effective assistance of counsel by overruling his objection to Mulkern's testimony and not permitting him more time to prepare for that testimony.[5]     We review for an abuse of discretion the trial court's decision to permit Mulkern's testimony.[6]     *See State v. White*, 460 A.2d 1017, 1021-22 (Me. 1983).

[¶23]     The Sixth Amendment to the United States Constitution provides a criminal defendant the right "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.     A constructive deprivation of the right to effective assistance of counsel may arise when the State interferes with counsel's ability to represent a defendant. *See Perry v. Leeke*, 488 U.S. 272, 280 (1989).     Yet "[o]nly

---

[5]  As a general rule, "[w]e do not consider claims of ineffective assistance of counsel on direct appeal; such claims will only be considered after a certificate of probable cause has been issued following a hearing on a post-conviction petition." *State v. Ali*, 2011 ME 122, ¶ 20, 32 A.3d 1019.  However, this principle does not apply to cases involving an alleged extrinsic interference with the right to counsel, as opposed to alleged attorney error or incompetence resulting in deprivation of the right to counsel. *See State v. Brown*, 2000 ME 25, ¶¶ 17-19, 757 A.2d 768 (reviewing on direct appeal an appellant's argument that the trial court's denial of his motion to continue deprived him of his right to effective assistance of counsel).

[6]  Although Bellavance did not specifically request a continuance at trial, he adequately objected to having insufficient time to prepare for Mulkern's immunized testimony to preserve this issue for our review.  *See* 15 M.R.S. § 2117 (2012).

an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." *State v. Brown*, 2000 ME 25, ¶ 19, 757 A.2d 768 (quoting *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)); *see also United States v. Maldonado*, 708 F.3d 38, 42 (1st Cir. 2013) (same).

[¶24]  In prior cases, we have considered whether a trial court erred in permitting the testimony of a previously undisclosed witness for the prosecution. *See White*, 460 A.2d at 1021-22; *State v. Ifill*, 349 A.2d 176, 181 (Me. 1975). Although neither case considered the extent to which a previously undisclosed witness may interfere with the constitutional right to effective assistance of counsel, the salient facts in *White* identify the considerations relevant to the constitutional question before us in this case.

[¶25]  In *White*, we affirmed the trial court's decision to permit the testimony of two previously undisclosed witnesses for the prosecution located during the trial, basing our opinion on three salient facts.  460 A.2d at 1021-22. First, we noted that the defendant, White, did not contend that the prosecution violated M.R. Crim. P. 16 in disclosing the witnesses when it did.  *Id.* at 1021 n.4. Second, the court granted the defense access to the witnesses and a two-day continuance to prepare for the testimony, and the defense had a total of six days from the time when the prosecution disclosed the witnesses to when they testified.

*See id.* at 1021-22. Third, White failed to provide specific reasons why he needed more time to prepare for the testimony in order to avert prejudice. *Id.* at 1022.

[¶26] These same considerations are relevant to determining whether the court acted within the bounds of its discretion in permitting Mulkern's testimony on December 23. First, it does not appear from the record that the prosecution violated M.R. Crim. P. 16 in procuring Mulkern's testimony. Before Mulkern testified, the prosecution provided Bellavance with an audio recording of Mulkern's December 20 proffer. Following the prosecution's disclosure of the immunity agreement, Bellavance and the court carefully questioned the prosecution to ascertain why the agreement occurred at the eleventh hour. This inquiry revealed no suggestion that the prosecution improperly withheld information regarding Mulkern's change in testimony. Although the prosecution did not disclose prior, unaccepted offers of immunity to Mulkern, it had no duty—pursuant to the August and December discovery orders—to disclose such offers until December 20, when it learned that Mulkern would, in fact, testify for the prosecution. Thus, as in *White*, the record here reveals no violation of M.R. Crim. P. 16 in the prosecution's procurement of Mulkern's testimony.

[¶27] Second, the court provided Bellavance with adequate opportunity to prepare for Mulkern's changed testimony. The court suspended the trial for one day, effectively providing Bellavance with forty-eight hours' notice of Mulkern's

immunized testimony. This is less than the two-day continuance resulting in six days of preparation time that we affirmed in *White*. However, the amount of time that the court suspended trial is comparable, given that *White* involved two previously undisclosed witnesses, whereas this case involves only one. In addition, Bellavance was on notice, as of at least December 9, that Mulkern's testimony might in fact support the prosecution's case.[7] Furthermore, the court facilitated Bellavance's preparation by ordering that Bellavance have the opportunity to question Mulkern before he testified, conditioning Mulkern's testimony on his availability to Bellavance, and requiring that Mulkern be available to Bellavance for recall as a witness.

[¶28] Third, Bellavance has not established that he suffered sufficient prejudice to show that the court abused its discretion by not permitting him additional time to prepare for Mulkern's testimony. Bellavance asserts that the court denied him adequate time to investigate the timing and geographical aspects of Mulkern's story and his history of drug use, whether he should call or recall

---

[7] At the time that the prosecution disclosed the immunity agreement, Bellavance was already on notice regarding Mulkern's status as a potentially crucial witness who the State believed could testify against Bellavance. Prior to the trial, counsel for Bellavance had interviewed Mulkern, and Bellavance had access to MacMaster's summary of his interview with Mulkern, which indicated that State investigators suspected that Mulkern assisted Bellavance in the arson. Although Mulkern denied any involvement in the crime during both interviews, Bellavance was on notice of the State's theory that Mulkern assisted Bellavance and that MacMaster had hinted to Mulkern that he should cooperate with the prosecution. Bellavance himself admitted, in his March 2010 interview with MacMaster, that he spent time with Mulkern and Mulkern's girlfriend on the night of the fire. Thus, Bellavance was on notice as to the potential importance of Mulkern's testimony.

witnesses in light of Mulkern's testimony, and whether to pursue a plea bargain. Yet Bellavance fails to identify specifically how the court's decision that Mulkern would testify on December 23 constitutes an abuse of discretion by depriving him of additional time to investigate information that would have significantly strengthened his case, despite having the opportunity to establish the specific grounds for prejudice through post-trial proceedings. In short, Bellavance fails to identify any actual prejudice caused by not having additional time to prepare for Mulkern's testimony.

[¶29] Under the circumstances, Bellavance's Sixth Amendment rights were not violated. The court did not act unreasonably or arbitrarily in overruling Bellavance's objection to Mulkern's testimony and not permitting Bellavance additional time to prepare for Mulkern's testimony. *See Brown*, 2000 ME 25, ¶ 19, 757 A.2d 768. Thus, the trial court did not abuse its discretion in permitting Mulkern to testify on December 23. *See White*, 460 A.2d at 1022. We have carefully considered Bellavance's remaining arguments and find them to be unpersuasive, and do not address them separately.[8]

---

[8] Bellavance's additional arguments on appeal include, but are not limited to, that (1) the jury's exposure to publicity surrounding the arson denied him of his right to a trial by an impartial jury; (2) the court deprived him of his right to compulsory process and to present witnesses in his defense when it notified a defense witness of the witness's Fifth Amendment rights; (3) the court rushed the jury to reach a verdict, thereby depriving him of a fair trial; (4) the court abused its discretion when it denied Bellavance's multiple motions to dismiss the indictment for alleged discovery violations; and (5) the court abused its discretion and violated Bellavance's constitutional rights to due process, compulsory

The entry is:

Judgment affirmed.

---

**On the briefs:**

Andrews B. Campbell, Esq., Andrews Bruce Campbell, P.A., Bowdoinham, for appellant Raymond Bellavance Jr.

Alan P. Kelly, Acting District Attorney, Prosecutorial District IV, Augusta, for appellee State of Maine

**At oral argument:**

Andrews B. Campbell, Esq., for appellant Raymond Bellavance Jr.

Maeghan Maloney, District Attorney, Prosecutorial District IV, Augusta, for appellee State of Maine

Kennebec County Superior Court docket number CR-2010-230
FOR CLERK REFERENCE ONLY

---

process, and a fair trial when it excluded testimony by defense witness Jamie Morrison pursuant to M.R. Evid. 403.