MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2013 ME 83
Docket:        Ken-13-50
Argued:        September 10, 2013
Decided:       October 8, 2013

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR,
               JJ.

STATE OF MAINE

v.

JONATHAN M. CAREY

ALEXANDER, J.

[¶1]  Jonathan M. Carey appeals from a judgment of conviction of unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(F) (2012), and unlawful sexual touching (Class D), 17-A M.R.S. § 260(1)(C) (2012), entered in the Superior Court (Kennebec County, *Mills, J.*) after a jury found him guilty.  This trial was the third held in this case after two mistrials.

[¶2]  Carey argues on appeal that the court (*Murphy, J.*) erred in declaring a mistrial in his second trial.  Carey also argues that the court (*Mills, J.*) erred in denying his motion for a new trial, filed on the grounds of prosecutorial misconduct, after the third trial, and that the court erred in failing to "limit," on its own initiative, misstatements of law and fact that the prosecutor allegedly made in closing argument and in rebuttal at the third trial.  We affirm the judgment.

## I. CASE HISTORY

[¶3]   Viewing the evidence in a light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable doubt.  *See State v. Woodard*, 2013 ME 36, ¶ 7, 68 A.3d 1250.

[¶4]   In summer 2008, three girls had a sleepover at the home of one of the girls who lived with her mother and her mother's then-boyfriend, Jonathan M. Carey.  The three girls all slept in the daughter's room on a mattress on the floor.  After the girls went to sleep, Carey entered the bedroom and began stroking the hair of one of the daughter's friends.  That girl told Carey to stop, and he moved around the bed and lay down next to the victim in this case.

[¶5]   The victim, then twelve or thirteen years old, woke up to find Carey touching her sexually.  The victim shoved him away and retreated into the bathroom.  She later told the other two girls what had happened, but by agreement, the girls did not tell anyone else until a year later when the daughter "told."  One can infer from the record that the daughter told her mother, Carey's then-girlfriend, what Carey had done to the victim and that the daughter also told her mother that Carey had previously sexually assaulted her.

[¶6]   A criminal complaint was filed against Carey.  Carey was subsequently indicted on one count of unlawful sexual contact and one count of unlawful sexual touching committed against the victim and two counts of unlawful sexual contact

committed against the daughter. Carey pleaded not guilty, and the case was set for a jury trial.

[¶7] The first jury trial began on July 20, 2010. The victim and the daughter testified and were subject to Carey's cross-examination. However, after another State's witness invoked her Fifth Amendment right against self-incrimination during her testimony, precluding Carey from cross-examining her, the court (*Mills, J.*) declared a mistrial in response to Carey's motion and due to manifest necessity.

[¶8] A second trial began in September 2011. The victim again testified. The daughter then testified on direct examination to facts relevant to Carey's sexual assault of the victim and testified that Carey did "[t]he same thing [to her that] he did to" the victim, but refused to be more specific. The daughter became very emotional, broke down, and essentially refused, both in and out of the jury's presence, to answer any further questions.

[¶9] The State requested that the daughter be treated as an unavailable witness pursuant to M.R. Evid. 804(a)(2) and (b)(1) so that her complete testimony from the first trial could be admitted in the second trial under that exception to the hearsay rule. Carey objected, arguing that the witness was not "unavailable" because she had partially testified at the second trial and that his inability to

4

cross-examine her on that partial testimony raised Sixth Amendment confrontation issues.

[¶10]  Carey acknowledged the dilemma at issue; he agreed with the State that the witness should not be brought back given what had already occurred in the jury's presence, but he explicitly did not waive his Sixth Amendment right to confrontation, arguing, "I would object myself to having her brought in again [before the jury] because I think it has been damaging to my . . . case at this point, but if [the State] is not going to bring her back, [I] still [have] a right to cross-examine her." Carey also acknowledged that there was a similarity between this trial and how the first trial ended when the parties agreed to a mistrial due to manifest necessity, observing at the second trial that, "for [me] not to be able to cross-examine [the witness] would be manifest necessity again." The court (*Murphy, J.*) and the parties then had a lengthy discussion about how to proceed, including discussing the possibility that another mistrial could be declared due to manifest necessity if no other resolution could be reached. The court recessed for the day to allow the parties time to consider the issues.

[¶11] The witness did not return the next day, and the State reported that she would persist in refusing to testify in any event. Carey initially indicated that he wanted an opportunity to cross-examine the witness on testimony she gave the previous day, but withdrew that request acknowledging that bringing her back in

front of the jury was not in his best interest. The court appeared to agree that any attempt to coerce additional testimony from the witness would be both futile and prejudicial to Carey. Accordingly, the court declared a mistrial, finding manifest necessity, concluding that "there is a confrontation issue that cannot be remedied by the introduction of the prior trial testimony because there were statements in front of the jury that were different from what [the daughter] testified to at trial," and observing that "the defense seems to be agreeing that it would be futile to try to ask her those questions and in fact prejudicial to the defense if she was brought back in front . . . of the jury . . . ."

[¶12] There was no objection to the declaration of a mistrial. Carey's only response was to inquire about an unrelated topic. The court then conferred with counsel off the record. There is no indication that Carey opposed a mistrial during that conference or at any other time before the court discharged the jury.

[¶13] Before the third trial, the State dismissed the two counts of unlawful sexual contact relating to the daughter and proceeded on only the two counts relating to the victim. Carey did not move to have the two remaining counts dismissed on the grounds that double jeopardy precluded retrial.

[¶14] The court (*Mills, J.*) held the third trial in March 2012. The jury found Carey guilty of unlawful sexual contact and unlawful sexual touching. Carey moved for a new trial. The trial court held a non-evidentiary hearing on

6

Carey's motion. At the hearing, Carey argued that he was deprived of a fair trial on multiple grounds, including that Carey had personally observed at trial (but not informed his attorney until after trial) that the prosecutor nodded his head "yes" or shook his head "no" and made hand gestures at certain times when Carey's attorney was cross-examining the victim. Carey argued to the trial court that these gestures were an attempt to coach the witness's testimony. He did not argue that the prosecutor's gestures may have influenced the jury.

[¶15] The prosecutor admitted at the hearing that he pointed to a visual aid for the benefit of opposing counsel and nodded and shook his head at trial as Carey cross-examined the victim. However, the prosecutor stated that he was not intending to transmit any answers to the victim and that he could not have transmitted any message to the victim because the victim's view of the prosecutor was blocked by Carey's counsel. The prosecutor indicated that he nodded his head in the course of taking notes and preparing for redirect. The court denied Carey's motion for a new trial in a written decision. Carey timely appeals from the judgment of conviction pursuant to 15 M.R.S. § 2115 (2012) and M.R. App. P. 2.[1]

---

[1] Carey was sentenced to eight years of incarceration, with all but four years suspended, and four years of probation for unlawful sexual contact and to ten months of incarceration, to be served concurrently, for unlawful sexual touching. Carey was ordered to comply with all requirements of SORNA of 1999, 34-A M.R.S. §§ 11201–11256 (2012), and pay a fee. The Sentence Review Panel, *see* M.R. App. P. 20, denied Carey's request for leave to appeal from the sentence.

## II. LEGAL ANALYSIS

[¶16] Carey presents three issues on appeal, arguing that the trial court erred in (1) declaring a mistrial in the second trial; (2) denying his motion for a new trial based on allegations of prosecutorial misconduct in the prosecutor's gestures during the third trial; and (3) failing to limit, on its own initiative, alleged misstatements of law and fact that the prosecutor made in closing argument and in rebuttal at the third trial. Reviewing the prosecutorial statements challenged in the third issue for obvious error because Carey did not object at trial, *see* M.R. Crim. P. 52(b); *Woodard*, 2013 ME 36, ¶¶ 33, 37, 68 A.3d 1250, we conclude that there was no obvious error and do not address the third issue further.[2]

### A. Declaration of a Mistrial in the Second Trial

[¶17] Carey argues that the court erred in ordering a mistrial at the second trial because (1) Carey did not move for a mistrial, (2) the court's ruling "did not afford the defense an opportunity to retain primary control over the course of the case," and (3) there was no manifest necessity because alternatives to mistrial were available. Carey asserts that when a mistrial is improperly declared, retrial violates

---

[2] Carey, who is represented by different counsel on appeal, contends that the prosecutor misstated the law on three occasions in closing argument at the third trial; for example, he contends, without merit, that the prosecutor erred when he characterized the criminal offenses at issue as "old statutory laws." Carey also contends, with little or no merit, that the prosecutor made two misstatements of fact in his closing argument and three misstatements of fact in his rebuttal in closing. As we conclude above, there is no obvious error. *See* M.R. Crim. P. 52(b); *State v. Woodard*, 2013 ME 36, ¶¶ 33, 37, 68 A.3d 1250.

8

the defendant's constitutional right to be free from double jeopardy and that the case should be dismissed.

[¶18] Carey did not object to the declaration of a mistrial at any time at the second trial, or at any time until this appeal for that matter, and we therefore review the declaration of a mistrial for obvious error. *See* M.R. Crim. P. 52(b); *see also, e.g.*, *United States v. Canady*, 142 Fed. Appx. 133, 134 (4th Cir. 2005); *State v. Bellavance*, 2013 ME 42, ¶ 21 n.4, 65 A.3d 1235.

[¶19] To demonstrate obvious error, a defendant must show that there is an error and that the error is plain and affects substantial rights. *Bellavance*, 2013 ME 42, ¶ 21 n.4, 65 A.3d 1235; *Woodard*, 2013 ME 36, ¶ 33, 68 A.3d 1250; *State v. Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147. The defendant's burden in establishing that an error affected his substantial rights is significant; he must demonstrate "a reasonable probability that" the error, viewed "in relation to the trial as a whole," "affected the outcome of the proceeding." *Woodard*, 2013 ME 36, ¶¶ 33, 37, 68 A.3d 1250. Even if these conditions are met, "we will set aside a jury's verdict only if we conclude that . . . the error seriously affects the fairness and integrity or public reputation of judicial proceedings." *Id.* ¶ 33.

[¶20] We review a trial court's decision to declare a mistrial on the grounds of manifest necessity for an abuse of discretion. *State v. Lewis*, 2003 ME 18, ¶ 7, 816 A.2d 823. However, in this case we need not reach the issue of manifest

necessity. We affirm the declaration of a mistrial on the alternate grounds that Carey impliedly consented to the entry of a mistrial. *See, e.g.*, *United States v. DiPietro*, 936 F.2d 6, 9 (1st Cir. 1991) (declining to reach the question of manifest necessity because the mistrial was declared with the defendant's effectual consent).

[¶21] "A defendant's failure to object [to a mistrial] operates as implied consent to the declaration of mistrial," *State v. Beaudoin*, 600 A.2d 1097, 1098 (Me. 1991), when the defendant had an opportunity to object and did not. The defendant's consent to mistrial or conduct constituting implied consent, in turn, eliminates any barrier to retrial under the double jeopardy clause, barring intentional prosecutorial misconduct.[3] *Id.*; *see Lewis*, 2003 ME 18, ¶ 6, 816 A.2d 823 (holding that the subsequent prosecution of a defendant is not precluded under the double jeopardy clauses of the United States and Maine Constitutions when the defendant consented to the declaration of a mistrial).

[¶22] In this case, the court did not explicitly ask Carey whether he consented to declaration of a mistrial. However, Carey's objections to continuing to question the witness in front of the jury, combined with his objections to using the witness's testimony from the first trial, left the trial court little choice, which Carey apparently recognized. Carey was on notice that the court was considering a

---

[3] It is undisputed in this case that the event leading to the declaration of a mistrial in the second trial was not the result of intentional prosecutorial misconduct.

mistrial, given its discussion of this topic the day before the court declared a mistrial. Carey not only did not object to any mistrial during that discussion, but he agreed that "for [me] not to be able to cross-examine [the witness] would be manifest necessity again," referencing the mistrial declared due to manifest necessity in the first trial. Carey then had the night to consider the matter and prepare any objection to a mistrial.

[¶23] The next day, when the court stated its intent to declare a mistrial after discussing the issues with the parties and concluding that alternatives were not feasible, Carey had ample opportunity to state any objection. He did not do so.[4] He instead inquired of the court about a different topic and then apparently conferred with the court off the record, all before the court discharged the jury. By his conduct, Carey impliedly consented to the mistrial and thereby waived objection to the mistrial and to retrial. *See DiPietro*, 936 F.2d at 9-12 (concluding in similar factual circumstances that the defendant impliedly consented to a mistrial when he failed to object to the court's declaring a mistrial due to manifest necessity); *Beaudoin*, 600 A.2d at 1098-99; *see generally State v. Torrie*, 2002 ME 59, ¶¶ 5, 13, 794 A.2d 82 (affirming the declaration of a mistrial due to

---

[4] We additionally note that Carey apparently agreed with the declaration of a mistrial in the second trial even after the third trial had ended. In his motion for a new trial after the third trial concluded, Carey stated to the court that "[a] mistrial was declared in [the second trial] because a State witness started to testify and later refused to testify further during the State's direct examination, creating a confrontation clause issue for which there was no remedy."

manifest necessity and noting that the defense never objected to a mistrial despite notice of the possibility and an opportunity to object).[5]

[¶24]  There was no error, much less obvious error, in the declaration of a mistrial at the second trial.

B.      Allegations of Prosecutorial Misconduct

[¶25]  During the third trial, the prosecutor admittedly shook or nodded his head during at least certain portions of Carey's cross-examination of the victim. Carey argues that, despite the prosecutor's insistence that Carey's attorney blocked the witness's view of the prosecutor so that her testimony could not have been influenced by the prosecutor's head movements and gestures, there was no evidence to support the prosecutor's assertion.  Additionally, Carey argues, for the first time on appeal, that the jury could view the prosecutor's improper head gestures, which telegraphed the prosecutor's personal opinion of witness credibility.  Carey argues that the court therefore erred when it denied Carey's motion for a new trial, given that the State's case depended on that witness's credibility.

---

[5]  *See also Brock v. Indiana*, 955 N.E.2d 195, 201-02 & n.7 (Ind. 2011) (collecting cases, including *State v. Beaudoin*, 600 A.2d 1097 (Me. 1991), to conclude that most, if not all, federal circuits and many state courts have held that a defendant may tacitly or implicitly consent to be retried through certain conduct, including failing to raise a timely objection to a mistrial, as long as the defendant generally has an opportunity to object before the jury is discharged); *cf. State v. Flick*, 495 A.2d 339, 345-46 (Me. 1985) (holding that the defendant did not consent to a mistrial when the court *denied* the defense's motion for a mistrial, then declared a mistrial minutes later without inquiring whether the defendant wished to maintain the motion and the defendant did not impliedly consent).

12

[¶26]  "We review the denial of a motion for a new trial for clear error or an abuse of discretion, and will only vacate a conviction when the defendant was deprived of a fair trial." *State v. Carr*, 2012 ME 136, ¶ 8, 58 A.3d 1102.

[¶27]  The court concluded, after holding a non-evidentiary hearing on Carey's motion for a new trial, that there was no indication that the prosecutor improperly communicated with the victim during cross-examination.  The court determined, after reviewing the trial transcript, that the victim's responses to Carey during the challenged portion of cross-examination were not influenced by any nonverbal communication from the prosecutor.  The court's finding is supported by the trial record, and the court did not abuse its discretion in denying Carey's motion for a new trial based on the assertion that the prosecutor's head and hand gestures influenced the victim's testimony.

[¶28]  Carey also argues that the prosecutor's admitted head and hand gestures at trial would have been visible to the jury, and the jury was likely influenced by a perception that the prosecutor was vouching for or was otherwise responding to the credibility of the victim, the State's primary witness.  Because Carey did not raise this issue to the trial court, we review it for obvious error.[6]

---

[6]  Carey contends that we should apply harmless error review because, given the nature of the prosecutor's conduct, Carey's counsel did not learn of the prosecutor's action until after trial.  We decline to do so.  Carey himself personally observed the prosecutor's actions during the trial, recognized the concerning nature of those actions, and could have timely informed the court or his counsel at a point when corrective action would have been possible, but he elected not to raise the issue until after the trial was completed.

M.R. Crim. P. 52(b); *Woodard*, 2013 ME 36, ¶¶ 33, 37, 68 A.3d 1250; *State v. Merchant*, 2003 ME 44, ¶ 15, 819 A.2d 1005. When an issue was not presented to the trial court, our review on appeal is necessarily cautious, as it is not informed by a ruling made by "the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart." *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 401 (2006).

[¶29] Prosecutorial misconduct "almost always" includes a prosecutor's "vouching" for a witness and "[i]njecting personal opinion regarding the . . . credibility of . . . witnesses." *State v. Dolloff*, 2012 ME 130, ¶ 42, 58 A.3d 1032. An attorney's head gestures during examination of a witness could constitute impermissible vouching or injecting a personal opinion of a witness's credibility. Although the prosecutor conceded that he nodded or shook his head as he took notes in preparation for his redirect examination while the victim was cross-examined, it is impossible to know on this record the extent of these head gestures or whether the jury saw or could have seen these actions. Because this argument was not raised before the trial court, we do not have the benefit of it being discussed at the hearing on Carey's motion for a new trial or of the court's insight into what the jury did observe, or may have or could have observed, during the trial.

[¶30]   A prosecutor should not make any purposeful head gestures or other visible reactions to witness testimony during defense examination of a witness. However, on this record, we cannot conclude that the prosecutor engaged in misconduct by his head gestures or that, even if he had, the trial court's failure to note and sanction such misconduct constituted obvious error. *See Woodard*, 2013 ME 36, ¶¶ 33, 37, 68 A.3d 1250; *see, e.g.*, *United States v. Chambers*, 944 F.2d 1253, 1272 (6th Cir. 1991), *superseded by statute on other grounds* (holding that the prosecutor's winking and nodding at a government witness during his testimony "did not render the trial fundamentally unfair"); *Ramos v. Phillips*, 2005 WL 1541046, at *12 (E.D.N.Y. June 30, 2005) (concluding that an unconfirmed allegation that the prosecutor nodded his head up and down "profusely" during cross-examination of a witness did not establish that the prosecutor attempted to coach testimony and, "[i]n any event, there is no evidence that any such misconduct resulted in prejudice to the petitioner").[7] The court did not abuse its discretion in denying Carey's motion for a new trial.

---

[7] *See also, e.g.*, *United States v. Young*, 1997 WL 394903, at *2, 10-11 (M.D. Fla. June 16, 1997), concluding in circumstances seemingly similar to those presented here:

> Assuming the truth of the defendant's factual assertions [of "persistent prosecutorial misconduct," including that the prosecutor nodded his head during the defense's cross-examination of a witness], these instances were isolated and were not calculated to improperly persuade the jury. . . .   Defense counsel admitted that this was an isolated instance.   In fact, co-defendant['s counsel] conceded that it was probably an inadvertent reaction by the prosecutor.   The prosecutor['s] head nodding was most likely an unintended physical acknowledgement that the responses to the cross-examination were favorable to his case rather than an attempt to coach a witness.

The entry is:

Judgment affirmed.

---

**On the briefs and at oral argument:**

Robert E. Sandy, Jr., Esq., Sherman & Sandy, Waterville, for appellant Jonathan M. Carey

Meaghan Maloney, District Attorney, Prosecutorial District IV, Augusta, for appellee State of Maine

Kennebec County Superior Court docket number CR-2009-752
FOR CLERK REFERENCE ONLY