STATE OF MAINE                           SUPERIOR COURT
KENNEBEC, ss                           CRIMINAL ACTION
                                    DOCKET NO. CR-14-318

JONATHAN CAREY,

       Petitioner

     v.                                 DECISION AND ORDER
                                    ON PETITION FOR
STATE OF MAINE,                      POST-CONVICTION REVIEW

       Respondent

## Background

Petitioner was indicted on 12/30/09 for class B unlawful sexual contact and class C unlawful sexual contact involving B.S. and class B unlawful sexual contact and class D unlawful sexual touching involving A.S.A. B.S. is the daughter of Sarah Masse, petitioner's former girlfriend with whom he lived. B.S. and A.S.A. were "like sisters," and spent time at petitioner's apartment, according to A.S.A.'s testimony at the first trial. (7/20/10 Trial Transcript 29-30.) A.S.A. first reported what happened to her to Ms. Masse when Ms. Masse called A.S.A. (9/14/11 Trial Transcript 89-90.)

Petitioner's trial counsel for the three trials began practicing law in 2007. Her practice is entirely criminal defense. This was not her first trial involving sex crimes.

Petitioner's first jury trial began July 20, 2010. After a State's witness, Ms. Masse, admitted cashing petitioner's Social Security checks, the court recessed the trial and appointed an attorney to represent Ms. Masse. (7/20/10 Trial Transcript 151-53.) After consultation with the attorney, Ms. Masse concluded she would assert her Fifth Amendment privilege if further questions about the household funds and income were asked. (7/20/10 Trial Transcript 153-54.) Both attorneys joined in requesting a mistrial, which was granted. (7/20/10 Trial Transcript 155-59.)

1

Petitioner's second jury trial began September 14, 2011. Ms. Masse, still represented by counsel, intended to testify and waive her Fifth Amendment privilege. (9/14/11 Trial Transcript 4-11.) The alleged victim in counts 1 and 2, B.S., was unwilling to answer the prosecutor's questions about her interaction with petitioner. (9/14/11 Trial Transcript 140-44; 149-51; 163; 165-66; 181.) The court spoke with B.S. on two occasions regarding her failure to answer questions. (9/14/11 Trial Transcript 162-65; 178-81.) Near the conclusion of B.S.'s testimony on September 14, 2011, the court noted, "[i]f this is the end of her testimony, I think even the State would concede that there would not be enough to go to the jury." (9/14/11 Trial Transcript 155.) In the brief additional attempt to solicit testimony from B.S., she added nothing that would have allowed the charges involving her to go to the jury. (9/14/11 Trial Transcript 165-66.)

Petitioner's counsel argued her client had a Sixth Amendment right to cross-examine B.S. (9/14/11 Trial Transcript 168, 182-184, 189.) After discussion with counsel about the ramifications of B.S.'s failure to testify, the court recessed the trial. (9/14/11 Trial Transcript 151-62; 166-78; 181-99; 191-93.) The State did not ask B.S. to be present at the courthouse on the next day. (9/15/11 Trial Transcript 3-5.) Petitioner's counsel initially continued her desire to cross-examine B.S., but later withdrew that request. (9/15/11 Trial Transcript 5, 7.)

The court declared a mistrial. (9/15/11 Trial Transcript 7-9.) Neither the State nor petitioner's counsel made any statement regarding a mistrial on September 15, 2011. (9/15/11 Trial Transcript.) The issue had been discussed the previous day. (9/14/11 Trial Transcript 181-99.) Trial counsel noted that her inability to cross-examine B.S. "would be manifest necessity again." (9/14/11 Trial Transcript 189.) With regard to the M.R. Evid. 804(a)(2) issue, the court stated:

2

> I am going to find that it is not necessary at this point for the Court to make a decision whether [B.S.] is unavailable within the meaning of the confrontation clause because of the Court's finding that if she was unavailable and the prior testimony was admitted, that the confrontation issues created by her statements yesterday and the inability of the defense to cross-examine her on those statements, creates a confrontation issue that cannot be remedied.

(9/15/11 Trial Transcript 7-8.)

After the second mistrial, a misdemeanor plea was scheduled for November 29, 2011. Petitioner changed his mind and no pleas were entered. (State's Exs. 1, 2.)

Petitioner's third jury trial began March 15, 2012. Prior to the start of the third trial, counts 1 and 2 of the indictment involving B.S. were dismissed with prejudice by the State. (3/15-16/12 Trial Transcript 3-4.) No evidence was presented at the third trial regarding Ms. Masse's use of petitioner's money. No evidence was presented by the defense. On March 16, 2012, the jury found petitioner guilty of unlawful sexual contact with penetration and unlawful sexual touching involving A.S.A. (3/15-16/12 Trial Transcript 188.)

On March 27, 2012, petitioner's counsel filed a motion for a new trial. Counsel argued that the prosecutor used leading questions when examining the State's witnesses throughout the three trials and impermissibly nodded his head to signal answers during cross-examination of A.S.A. during the third trial. (7/16/12 Transcript 3, 14.) The motion was argued on July 10, 2012; no evidence was offered. (7/16/12 Transcript.) By order filed August 20, 2012, the motion for a new trial was denied.

On November 29, 2012, petitioner was sentenced to eight years with all but four years suspended and four years of probation on unlawful sexual contact and ten months on unlawful sexual touching. The sentences were ordered to be served concurrently. (11/29/12 Transcript 18.)

3

Trial counsel filed petitioner's request for leave to file an appeal of sentence on December 13, 2012 and the request was denied on March 15, 2013. Trial counsel filed a notice of appeal on December 13, 2012. A different attorney pursued the appeal.

The Law Court affirmed the judgment on October 8, 2013. State v. Carey, 2013 ME 83, 77 A.3d 471. The Law Court reviewed the declaration of a mistrial of the second trial for obvious error because no objection was made to the declaration. Id. ¶ 18. The Law Court affirmed the declaration because defendant impliedly consented. Id. ¶ 20. The Law Court stated:

> In this case, the court did not explicitly ask Carey whether he consented to declaration of a mistrial. However, Carey's objections to continuing to question the witness in front of the jury, combined with his objections to using the witness's testimony from the first trial, left the trial court with little choice, which Carey apparently recognized.

Id. ¶ 22. The Law Court concluded the defendant's implied consent "eliminates any barrier to retrial under the double jeopardy clause." Id. ¶ 21.

In his petition for post-conviction review, petitioner argues he received ineffective assistance of counsel based on the following:

1.  counsel failed to object to a mistrial during the second trial;

2.  counsel failed to present defense witnesses;

3.  counsel failed to allow petitioner to testify;

4.  counsel failed to raise the issue of improper conduct by the prosecutor in a timely fashion; and

5.  counsel failed to present evidence at the hearing on the motion for a new trial.

For the following reasons, the petition is GRANTED.

Findings

Petitioner had an off-and-on relationship with Sarah Masse for three and one-half years. He was not employed and his only income was Social Security Disability

4

Insurance (SSDI) of $750.00 per month, based on a diagnosis of bi-polar and social anxiety disorder. The checks were sent to his address, 43 Franklin Street, Augusta, where Ms. Masse also lived. Her income was from the Temporary Assistance for Needy Families program and was much less than petitioner's monthly income.

During the summer of 2009, petitioner was incarcerated at the Kennebec County jail after having pleaded guilty to charges involving his brother Josiah Carey. There was bad blood between petitioner and his two brothers Josiah Carey and Joshua Carey, who were raised by their mother. Petitioner and his brother Jeremy Carey were raised by their father, James Carey. During petitioner's incarceration, he continued to maintain his apartment in Augusta and his SSDI checks continued to be mailed to that address. Unknown to petitioner, Ms. Masse and Josiah Carey began living together in petitioner's apartment. At the time, Josiah Carey was unemployed, had no income, and was addicted to crack. When petitioner was released on unsecured bail in September 2009, he was not permitted to return to his apartment.

While incarcerated, petitioner instructed Ms. Masse to cash one SSDI check to buy parts for a Jeep. He asked whether he had to sign the check. Ms. Masse said he did not and her bank would allow her to cash the check. Petitioner asked Ms. Masse to cash one additional check and to deposit $200.00 in his inmate account. She cashed the checks without his signing the checks. She deposited the $200.00 in his account. He did not know what happened to the remaining $550.00 and she did not account for that money. Three additional checks were sent to his Augusta address during his incarceration. Petitioner did not authorize Ms. Masse to cash any additional checks but $2800.00 (3 x $750.00 + $550.00) was never received by petitioner. Ms. Masse had access to the checks and she did not account for the money.

After his release from incarceration, petitioner spoke to the Social Security Administration representatives about his checks sent while he was incarcerated. Petitioner told them he did not sign the checks and did not receive all the money. According to petitioner, a handwriting analysis revealed he had not signed the checks.

During petitioner's incarceration, Ms. Masse began missing many visits with him at the jail and stopped writing to him, which was unusual. Petitioner wrote a letter to Ms. Masse and inquired why she no longer visited or wrote to him and why she answered the phone infrequently. Because she had stolen money from petitioner previously, he told her if she stole from him again, he would seek to have her charged in the federal court system. He received no response. Ms. Masse never denied taking the money.

A few days after he sent the letter, petitioner was summonsed for sexual acts against B.S., Ms. Masse's daughter, and B.S.'s friend, A.S.A. Petitioner allegedly committed the crimes a year before petitioner sent the letter to Ms. Masse. Petitioner had never heard these allegations before sending the letter. At the hearing on the petition for post-conviction review, he denied acting improperly toward B.S. and A.S.A.

Petitioner planned to testify at the first and second trials. He stated at the hearing on the petition that his trial counsel did not want his criminal record brought up if he testified. (3/15–16/12 Trial Transcript 6-10.) He stated he could have testified truthfully at the third trial about the conflict between Ms. Masse and him and that he did not commit any crime against A.S.A.

During the third trial, petitioner observed the prosecutor repeatedly communicate with A.S.A. during cross-examination by trial counsel. Petitioner stated the prosecutor nodded when the answer should be "yes" and shook his head when the answer should be "no" while A.S.A. was staring at the prosecutor. At the hearing on

6

the motion for a new trial, the prosecutor argued that petitioner's trial counsel blocked A.S.A.'s view of the prosecutor and A.S.A. was looking at the board and not at the prosecutor. (7/16/12 Transcript 21-22.) At the hearing on the petition, petitioner testified that the prosecutor's argument was not true and nothing blocked the jury's view of the prosecutor.

Petitioner did not know what to do when he observed this conduct and did not want to interrupt the court while in session. He testified at the hearing on the petition that he told his trial counsel as soon as they left court at the conclusion of the first day of trial. When trial counsel asked why he did not say anything, he testified he told her he did not want to get in trouble. Trial counsel took no action regarding this issue on either day of trial.

Petitioner testified at the hearing on the petition that his trial counsel did not really say it was petitioner's choice to testify. He concluded trial counsel was the professional and he would do what trial counsel thought was best, which was that petitioner not testify. He followed her advice.

Petitioner's father, James Carey, was not called as a witness at any of the three trials. At the hearing on the petition, James Carey testified that his four sons did not get along and had longstanding conflicts. James Carey had observed petitioner's relationship with Ms. Masse, which was volatile. James Carey and his wife witnessed Ms. Masse assault petitioner.

The police wanted the family to handle the 2008 issues between petitioner and Josiah Carey, but Josiah Carey insisted on petitioner's arrest. While petitioner was incarcerated, Ms. Masse and Josiah Carey arrived at James Carey's house in Hallowell. James Carey had strong words with Josiah Carey about being with petitioner's girlfriend while petitioner was incarcerated. Ms. Masse fed and transported Josiah

7

Carey because he had no job and no income. James Carey refused to help and did not trust Josiah Carey to be at the Hallowell residence because of his crack addiction.

James Carey knew petitioner received SSDI checks each month. During a visit at the jail, petitioner told James Carey that the visits by Ms. Masse had abruptly stopped and petitioner was very concerned about his money. He asked if his father would check with Ms. Masse about the money. James Carey did not tell petitioner that Josiah Carey was living with Ms. Masse at petitioner's apartment.

James Carey contacted Ms. Masse, who said not to worry about the money. Petitioner did not ask his father to retrieve the money and Ms. Masse did not volunteer the money. She called and asked James Carey to remove petitioner's belongings from the Augusta apartment. She then asked if he had heard what petitioner had done to her daughter. James Carey did not like the way she presented this information because she was not genuine. He determined it was as though she was trying to be sad and trying to make herself cry.

Trial counsel and a private investigator interviewed James Carey. Trial counsel agreed James Carey could have testified about the checks. Trial counsel stated petitioner and James Carey had a strange relationship and, at times, petitioner did not want trial counsel to speak to James Carey.

The entire thrust of the defense in the first trial was Ms. Masse's taking petitioner's money while he was incarcerated, which was clear from the bank records subpoenaed by trial counsel. The theft was Ms. Masse's motive for fabricating the allegations against petitioner. That defense became unavailable during the first trial when Ms. Masse invoked her Fifth Amendment right and declined to testify.

Trial counsel discussed petitioner's potential testimony. For the first and second trials, they expected he would testify about the SSDI checks, the visits and letters

between petitioner and Ms. Masse, and the reasons why it was in Ms. Masse's best interest for petitioner to remain in jail. The fact that petitioner had been in jail was integral to the defense regarding Ms. Masse's motive to fabricate allegations. Trial counsel was aware of petitioner's prior criminal record.

During the second trial, trial counsel determined a mistrial was necessary to avoid the jury hearing B.S.'s testimony from the first trial after having seen her decline to testify while sobbing on the witness stand. Trial counsel did not know whether the court would allow the State to use B.S.'s testimony from the first trial. Trial counsel could not recall whether she did not object to the mistrial because she had asked for one or one had already been declared. The record reflects and the Law Court confirmed that no objection to the declaration of a mistrial was made. Carey, 2013 ME 83, ¶¶ 12, 18, 77 A.3d 471.

After the second trial, the State agreed to dismiss the two charges involving B.S. and offered a new plea agreement that involved a plea to unlawful sexual touching with a sentence of one year with all but thirty days suspended. (State's Exs. 1, 2.) The plea offer was discussed and trial counsel thought petitioner would accept the offer, but he declined. He said he refused to plead guilty to something he did not do. Petitioner did not want to go to jail, but would have accepted a plea offer that did not include jail; the State was unwilling to make that offer.

Trial counsel concluded the entire Ms. Masse/check theory was no longer available during the third trial because that defense provided no reason for A.S.A. or M.L., a witness for the State, to lie. M.L. was a friend with B.S. and through B.S., was a friend with A.S.A. at the time of the events at issue. Trial counsel determined that the Ms. Masse/check theory was no longer a logical defense. Trial counsel hired two private investigators and A.S.A. declined to speak to both.

9

Trial counsel filed a motion in limine prior to the third trial to exclude petitioner's prior record. The motion was argued before trial at a non-evidentiary hearing. (3/15-16/12 Trial Transcript 6-10.) The court excluded one conviction but allowed the State to inquire about a burglary conviction and a theft conviction if the petitioner testified. (Id.)

During the third trial, the State presented the testimony of three witnesses, A.S.A., M.L., and a law enforcement officer. This was the third time A.S.A. and M.L. testified. Ms. Masse was crossed off the State's witness list. (2/28/12 Witnesses for the State.) Trial counsel listed the following witnesses: H.R, a friend of B.S., A.S.A., and M.L.; Vicente Morris, a law enforcement officer; and C.M. (3/7/12 Letter from Defense Counsel.) Initially, H.R. spoke to trial counsel and a private investigator and stated that petitioner crawled in the bed but just touched a leg. Trial counsel stated that later, H.R. went sour and shut down. Trial counsel told petitioner she would subpoena H.R. for the third trial but no witnesses were called to testify for the defense at that trial. (State's Ex. 2.)

Trial counsel's standard practice is to tell clients about their right not to testify. She stated she did not prohibit petitioner's testimony. She did not believe he said he wanted to testify at the third trial. She believes she advised petitioner it would be best if he did not testify but he had an absolute right to testify. Trial counsel believed petitioner's criminal history was very damaging.

The court discussed on the record petitioner's decision not to testify. (3/15-16/12 Trial Transcript 151-53.) Petitioner responded to the court that he understood he had the right not to testify, he had the opportunity to testify, he had enough time to speak to trial counsel about his decision not to testify, he did not wish to speak to her further, and he had no questions to ask trial counsel or the court. (Id. 152-53.)

According to trial counsel, petitioner told her the day after the verdict about the prosecutor's conduct during trial. That recollection is confirmed by trial counsel's statement at the hearing on the motion for a new trial. (7/16/12 Transcript 14.) She stated if the prosecutor's conduct had been brought to her attention in the courtroom, she would have taken action. Trial counsel found the information disturbing and it formed most of the basis for the motion for a new trial. At the hearing, the prosecutor argued that the location of trial counsel and the witness would have precluded the witness from seeing the prosecutor. He further stated,

> During the trial, did I shake my head yes or no? Yes, I did. During the trial did I – I know I shook my head no, and I know I shook my head yes, but during the trial, Your Honor, [defense counsel's] body was between me and the witness. I could [see] the Court and I could see [defense counsel's] back. As I'm sitting there at the desk and I'm doing my job, and I hear questions, I will shake my head no, I will nod yes. The witness cannot see me when I do that.

(7/16/12 Transcript 22.) Trial counsel testified the court took the motion under advisement for "a very long time," six months,[1] and then denied the motion.

Trial counsel testified she gave her best effort to the three trials. In hindsight, she regrets not advising petitioner more strongly to accept the plea offer. It was his decision but she should have "hammered it." Further, trial counsel testified she should have called petitioner and the prosecutor as witnesses at the hearing on the motion for a new trial.

Conclusions

For trial issues, the petitioner must demonstrate that there has been serious incompetency, inefficiency or inattention of counsel that falls below that which might be expected from an ordinary fallible attorney and that the ineffective representation by

counsel has likely deprived the defendant of an otherwise available substantial ground of defense. See State v. Brewer, 1997 ME 177, ¶¶ 15-17, 699 A.2d 1139. "[T]he test is applied on a case-by-case basis, and evaluations of ineffective assistance of counsel claims are 'guided by the overall justness and fairness of the proceeding.'" McGowan v. State, 2006 ME 16, ¶ 12, 894 A.2d 493 (quoting Aldus v. State, 2000 ME 47, ¶¶ 14-15, 748 A.2d 463). "The primary purpose of the effective assistance of counsel requirement is to ensure a fair trial." Pineo v. State, 2006 ME 119, ¶ 10, 908 A.2d 632.

"Defense counsel owes a duty to the client to conduct a reasonable investigation." Lagassee v. State, 655 A.2d 328, 329 (Me. 1995). That duty "includes a duty to interview witnesses who have information relevant to the case." See Doucette v. State, 463 A.2d 741, 745 (Me. 1983).

Heightened deference is accorded in reviewing strategic or tactical decisions by trial counsel. See True v. State, 457 A.2d 793, 796 (Me. 1983). The United States Supreme Court has stated:

> No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions.

Strickland v. Washington, 466 U.S. 668, 668-89 (1984). The question "is whether the strategy has been shown to be manifestly unreasonable." See True, 457 A.2d at 796.

1. Failure to object to a mistrial during the second trial.

During the second trial, the court stated that B.S.'s testimony was insufficient to present the charges involving her to the jury. The court also stated that admission of

---

' The motion was filed 3/26/12. The State's response was filed 3/30/12. A trial transcript was ordered to be prepared on 4/25/12. The transcript was filed on 5/7/12. Hearing on the motion for a new trial was held on 7/16/12. The court's order was filed on 8/20/12.

the prior testimony would not remedy the confrontation issues created during the second trial. At that point, the charges involving B.S. were, effectively, gone. It was not in petitioner's best interests to cross-examine B.S. because the State had not elicited sufficient proof of the charges on direct examination, not because B.S.'s demeanor would have prejudiced the jury. Trial counsel should have objected to the declaration of a mistrial.

The State argues that petitioner was not prejudiced because the charges involving B.S. were dismissed before the third trial. The focus of the inquiry, however, is the double jeopardy clause.

> A declaration of a mistrial after a jury is impaneled will thus prevent the government from attempting prosecution again on the same charges except in certain limited circumstances – when the defendant consents to the mistrial, or a manifest necessity for the mistrial exists.
> The State may retry a defendant following a mistrial only when taking all the circumstances into consideration, there is manifest necessity for the act, or the ends of public justice would otherwise be defeated. The manifest necessity exception is narrow, and should be used sparingly, only with the greatest caution, under urgent circumstances, and for very plain and obvious cases. Classic examples of manifest necessity include: a genuinely deadlocked jury; discovery of bias among the jurors; illness of a juror, judge, or the defendant; or when a fixed court term ends prior to verdict.

State v. Nielsen, 2000 ME 202, ¶¶ 5-6, 761 A.2d 876 (internal quotations and citations omitted).

When a defendant moves to dismiss an indictment on double jeopardy grounds, "[t]he State must shoulder the heavy burden of justifying a mistrial as manifestly necessary." State v. Lewis, 2003 ME 18, ¶ 7, 816 A.2d 823; see Nielsen, 2000 ME 202, ¶ 7, 761 A.2d 876. Neither the Superior Court nor the Law Court was afforded an opportunity to review the issue of manifest necessity because trial counsel impliedly consented to the declaration of a mistrial. See Carey, 2013 ME 83, ¶ 22, 77 A.3d 471; see

13

also State v. Johnson, 2014 ME 68, ¶ 12, 92 A.3d 351 (Law Court did not reach question of manifest necessity because defendant consented to mistrial).

In this case, the court proceeded based on the apparent agreement of the parties and trial counsel's statement that her inability to cross-examine B.S. would be manifest necessity. Very importantly, however, after finding manifest necessity based on the court's determination of a confrontation issue that could not be remedied, the court stated:

> If the State decides to retry this matter, that issue can be fully briefed and reargued and reconsidered by the court, if necessary . . . it will be up to the State whether or not it is pursued. I would urge the parties to continue speaking about the possibility of resolving this. This is an area of law that is not crystal clear for either one of you and I think frankly there are risks to both of you about going forward.

(9/15/11 Transcript 8-9.) Although the confrontation issue resolved with the dismissal of the charges involving B.S., the declaration of the mistrial based on the confrontation issue was never again raised or addressed by counsel, despite the court's invitation.

### 2. Failure to present defense witnesses.

The Ms. Masse/check defense remained viable even after the charges involving B.S. were dismissed. The jury could have concluded Ms. Masse had a motive to encourage the young witnesses to fabricate testimony. B.S. and A.S.A. were "like sisters" and it was Ms. Masse who called A.S.A. to discuss the petitioner's alleged conduct. Ms. Masse and James Carey were available to testify about the facts from which a motive and manipulation of the young witnesses could have been inferred.

The allegation that an adult encouraged a young witness to lie is often present in the defense of sex crimes. But in this case, there was direct evidence of an adult's self-interest in ensuring that petitioner remained incarcerated and her direct involvement with her daughter and her daughter's very close friend, the alleged victims.

14

Further, pursuing this defense would have allowed petitioner an opportunity to explain the convictions for which he was incarcerated and which the court determined were admissible for impeachment if petitioner testified. As trial counsel stated at the hearing on the petition, the fact that petitioner was incarcerated while Ms. Masse was cashing his checks was an integral part of the Ms. Masse/check defense.

If H.R. had been called and testified according to her statement to trial counsel and the private investigator, her testimony would have contradicted that of A.S.A. If H.R. testified differently, she could have been impeached.

The court defers to trial counsel's decision not to call Josiah Carey as a witness. His strong dislike of petitioner resulted in petitioner's arrest for previous charges. Josiah Carey was a crack addict with a criminal record. Further, he might have had Fifth Amendment issues with regard to petitioner's money, which Josiah Carey, unlike Ms. Masse, might not have waived.

Finally, there is nothing in this record to suggest petitioner agreed with the abandonment of the Ms. Masse/check defense. See Pineo, 2006 ME 119, ¶ 9, 908 A.2d 632. Petitioner testified at the hearing on the petition he was told by trial counsel that because B.S. was no longer involved, the defense regarding Ms. Masse's motive was lost.

3. Failure to allow petitioner to testify.

Trial counsel and the court explained petitioner's right to testify and his right not to testify. Trial counsel's professional opinion was that it was best that he not testify but petitioner made the decision not to testify.

Petitioner argues that he should have testified at the motion in limine to exclude his prior convictions in order to explain the circumstances of the convictions. (Pet.'s Mem. 9-10.); see State v. Rowe, 397 A.2d 558, 561 (Me. 1979) (defendant argued court

15

should have been told about defendant's prospective testimony at trial in order to balance the probative value of prior convictions against the prejudicial effect of that evidence.) If trial counsel had called petitioner to testify at the motion in limine, that testimony likely would have been permitted by the court. Based on petitioner's explanation of the prior convictions at the hearing on the petition, it is unlikely the court's ruling on the motion in limine would have changed if petitioner had testified at the motion in limine hearing. Further, if the State had objected at trial to petitioner's attempt during redirect testimony to explain his prior convictions, that objection likely would have been sustained.

> 4. Failure to raise the issue of improper conduct by the prosecutor in a timely fashion.

In the motion for a new trial, at argument on the motion, and at the hearing on the petition, trial counsel stated that she learned of the allegations about the prosecutor's conduct on the day after the trial concluded when she visited petitioner at the jail. (7/16/12 Transcript 14.) The court has no doubt that if trial counsel learned of these allegations during trial, she "would have been all over it," as she testified.

Trial counsel learned of the allegations on March 17, 2012. The motion for a new trial was filed on March 26, 2012. Although petitioner argues that was untimely, it is unstated how a delay of one week prejudiced petitioner.

> 5. Failure to present evidence at the hearing on the motion for a new trial.

The court agrees, and trial counsel did not disagree, that an evidentiary hearing on the motion for a new trial should have been held. Neither the Superior Court nor the Law Court was provided a sufficient record on which to determine an issue as serious as an allegation of prosecutorial misconduct. See Carey, 2013 ME 83, ¶ 27, 77 A.3d 471 ("after holding a non-evidentiary hearing on the motion for a new trial").

16

Conclusion

This was a challenging case to handle and involved difficult issues of law. Events were unanticipated and, as trial counsel testified, "all happened so fast," which presented obstacles arduous to maneuver. Trial counsel works diligently for her clients and accepts these difficult cases routinely. The court is satisfied, however, that the failure to object to the second mistrial and the failure to raise the issue again after the second trial, the failure to present evidence at the third trial, and the failure to present evidence at the motion for a new trial deprived petitioner "of a substantial ground of defense . . . and likely affected the outcome of the trial." McGowan, 2006 ME 16, ¶ 13, 894 A.2d 493. Petitioner has shown a reasonable probability that if those actions had been taken, the results would have been different. Id. "The reasonable probability requirement of the second prong means a probability sufficient to undermine confidence in the outcome." Id.

The entry is

> The Petition for Post-Conviction Review is GRANTED. Petitioner's Convictions for Class B Unlawful Sexual Contact and Class D Unlawful Sexual Touching are VACATED.
>
> The case is REMANDED for further proceedings consistent with this Decision and Order.

Date: August 13, 2015

Nancy Mills
Justice, Superior Court

## DOCKET RECORD

PL. ATTY: ROBERT SANDY                          State's Attorney: MAEGHAN MALONEY
         SHERMAN & SANDY
         74 SILVER ST
         PO BOX 499
         WATERVILLE ME 04903-0499
         RETAINED 03/25/2014

Filing Document: PETITION                       Major Case Type: POST CONVICTION REVIEW
Filing Date: 03/25/2014

## Charge(s)

## Docket Events:

03/31/2014 FILING DOCUMENT -  PETITION FILED ON 03/25/2014

03/31/2014 Party(s):  JONATHAN M CAREY
           ATTORNEY -  RETAINED ENTERED ON 03/25/2014

           Attorney:  ROBERT SANDY
03/31/2014 POST CONVIC. REVIEW -  REVIEW SENT FOR REVIEW ON 03/31/2014

           SCANNED TO SUE BLACKMORE
04/28/2014 POST CONVIC. REVIEW -  ASSIGNMENT ASSIGNED TO DOCKET ON 04/18/2014
           WILLIAM R ANDERSON , JUSTICE
           COPIES SENT TO PARTIES
05/15/2014 POST CONVIC. REVIEW -  ASSIGNMENT ASSIGNED TO JUSTICE ON 05/13/2014
           NANCY  MILLS , JUSTICE
06/02/2014 POST CONVIC. REVIEW -  NOT AMENDING PCR PETITION FILED ON 06/02/2014

           Attorney:  ROBERT SANDY
06/06/2014 POST CONVIC. REVIEW -  RESPONSE TO PETITION FILED ON 06/05/2014

           DA:  FERNAND LAROCHELLE
06/16/2014 POST CONVIC. REVIEW -  PCR CONFERENCE SCHEDULED FOR 06/24/2014 at 08:00 a.m.
           NANCY  MILLS , JUSTICE
           PHONE CONFERENCE W/ J. MILLS IN FRANKLIN.  ATTY SANDY TO INITIATE TO 778-3347.
06/16/2014 POST CONVIC. REVIEW -  PCR CONFERENCE NOTICE SENT ON 06/16/2014

06/23/2014 CASE STATUS -  CASE FILE LOCATION ON 06/23/2014

           W/ J. MILLS
06/24/2014 POST CONVIC. REVIEW -  PCR CONFERENCE CONTINUED ON 06/24/2014

06/24/2014 POST CONVIC. REVIEW -  PCR CONFERENCE SCHEDULED FOR 06/24/2014 at 08:30 a.m.
           NANCY  MILLS , JUSTICE
           PHONE CONFERENCE.                                    ATTYS NOTIFIED
           BY PHONE.
06/25/2014 MOTION -  OTHER MOTION FILED BY STATE ON 06/25/2014

DA:  FERNAND LAROCHELLE
MOTION FOR DISCLOSURE                                    SCANNED TO
JUSTICE MILLS THIS DATE
07/02/2014 POST CONVIC. REVIEW -  PCR CONFERENCE HELD ON 06/25/2014
           NANCY  MILLS , JUSTICE
           Attorney:  ROBERT SANDY
           DA:  FERNAND LAROCHELLE
07/02/2014 CASE STATUS -  CASE FILE RETURNED ON 06/30/2014


07/02/2014 POST CONVIC. REVIEW -  ORDER RESULTING FROM PCR CONF FILED ON 06/25/2014
           NANCY  MILLS , JUSTICE
           NEEDS 1/2 FOR HEARING
                                                    COPY TO ATTY SANDY AND DDA
           LAROCHELLE
07/08/2014 MOTION -  OTHER MOTION GRANTED ON 07/07/2014
           NANCY  MILLS , JUSTICE
           MOTION FOR DISCLOSURE
01/05/2015 HEARING -  EVIDENTIARY HEARING SCHEDULED FOR 04/28/2015 at 01:00 p.m. in Room No.  6
           NANCY  MILLS , JUSTICE
           NOTICE TO PARTIES/COUNSEL
01/05/2015 HEARING -  EVIDENTIARY HEARING NOTICE SENT ON 01/05/2015


01/05/2015 WRIT -  HABEAS CORPUS TO TESTIFY ORDERED ON 01/05/2015
           NANCY  MILLS , JUSTICE
01/05/2015 WRIT -  HABEAS CORPUS TO TESTIFY ISSUED ON 01/05/2015


           CERTIFIED COPY TO SHERIFF DEPT.
04/30/2015 HEARING -  EVIDENTIARY HEARING SCHEDULED FOR 05/04/2015 at 12:30 p.m.
           NANCY  MILLS , JUSTICE
           NOTICE TO PARTIES/COUNSEL
04/30/2015 HEARING -  EVIDENTIARY HEARING NOTICE SENT ON 04/30/2015


04/30/2015 WRIT -  HABEAS CORPUS TO TESTIFY ORDERED ON 04/30/2015
           NANCY  MILLS , JUSTICE
04/30/2015 WRIT -  HABEAS CORPUS TO TESTIFY ISSUED ON 04/30/2015


           CERTIFIED COPY TO SHERIFF DEPT.
06/04/2015 OTHER FILING -  OTHER DOCUMENT FILED ON 06/03/2015


           Attorney:  ROBERT SANDY
           PETITIONER'S ARGUMENT IN SUPPORT OF PETITION FOR POST CONVICTION REVIEW
06/05/2015 OTHER FILING -  OTHER DOCUMENT FILED ON 06/05/2015


           DA:  PAUL CAVANAUGH
           STATE'S ARGUMENT OPPOSING POST CONVICTION REVIEW
08/14/2015 HEARING -  EVIDENTIARY HEARING HELD ON 04/28/2015
           NANCY  MILLS , JUSTICE
           Attorney:  ROBERT SANDY
           DA:  PAUL CAVANAUGH
           COURTROOM 6  1:27:39 TO 3:31:08
08/14/2015 HEARING -  EVIDENTIARY HEARING HELD ON 05/04/2015
           NANCY  MILLS , JUSTICE

Attorney: ROBERT SANDY
DA: PAUL CAVANAUGH
COURTROOM 6  12:30:52 TO 1:25:40
08/14/2015 FINDING -  GRANTED ENTERED BY COURT ON 08/13/2015
NANCY  MILLS , JUSTICE
DECISION AND ORDER ON PETITION FOR POST-CONVICTION REVIEW                - THE PETITION
FOR POST-CONVICTION REVIEW IS GRANTED.  PETITIONER'S CONVICTIONS FOR CLASS B UNLAWFUL
SEXUAL CONTACT AND CLASS D UNLAWFUL SEXUAL TOUCHING ARE VACATED.
                                        - THE CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT
WITH THIS DECISION AND ORDER.
 COPY TO DDA CAVANAUGH, ATTY SANDY, REPOSITORIES


A TRUE COPY
ATTEST: _____
                    Clerk